# UNITED STATES DISTRICT COURT
# DISTRICT OF MARYLAND

| | |
|---|---|
| WILLIAM K. DIXON, *Prisoner Identification No.* 212-5347,<br><br>    Plaintiff,<br><br>    v.<br><br>WARDEN FRANK B. BISHOP, JR.,<br>KRISTI CORTEZ, R.N.,<br>KRISTA BILAK, R.N.P., and<br>MULUGETA AKAL, M.D.,<br><br>    Defendants. | Civil Action No. TDC-17-0503 |

**MEMORANDUM OPINION**

Plaintiff William K. Dixon, a prisoner confined at North Branch Correctional Institution ("NBCI") in Cumberland, Maryland, has filed this self-represented civil rights action pursuant to 42 U.S.C. § 1983 based on an injury he sustained when he fell in the shower. Dixon alleges that Defendant Warden Frank B. Bishop, Jr. ("the Warden") failed to protect him from this injury, and that Defendants Kristi Cortez, R.N., Krista Bilak, R.N.P., and Mulegata Akai, M.D. (collectively "the Medical Defendants"), failed to provide adequate medical care for his injury, in violation of the Eighth Amendment to the United States Constitution. Dixon seeks money damages and an injunction mandating the installation of floor mats and safety rails in the NBCI shower area. Pending before the Court are separate Motions to Dismiss or, in the Alternative, for Summary Judgment filed by the Warden and the Medical Defendants, as well as Dixon's Motion for Inspection of Compelling Discovery ("Motion to Compel"). Having reviewed the pleadings and submitted materials, the Court finds that no hearing is necessary. *See* D. Md. Local R.

105.6. For the reasons set forth below, Dixon's Motion to Compel will be DENIED, and Defendants' Motions to Dismiss will be GRANTED.

## BACKGROUND

On February 2, 2017 at approximately 4:50 p.m., Correctional Officer II ("C.O. II") Gregory Edwards was escorting Dixon and other inmates to the showers in Housing Unit No. 1. When Edwards opened the door to Shower No. 1-B-234, Dixon stepped into the shower and immediately slipped and fell to the floor. Edwards called for assistance, and Sgt. April Carr, C.O. II Jacob Northcraft, C.O. II Ryan Lewis, C.O. II Joshua Reikie, and Defendant Kristi Cortez, R.N., a registered nurse employed by Wexford Health Sources, Inc. ("Wexford"), arrived on the scene. Nurse Cortez placed a neck brace on Dixon. Under her supervision, the correctional officers placed Dixon onto a backboard and carried him to the housing unit's medical room.

Once inside the medical room, Dixon complained of severe neck and back pain and stated that he could not move his arms or legs. Nurse Cortez examined Dixon and found no visible signs of injury. After Nurse Cortez called 911, Dixon was taken by ambulance to the Western Maryland Regional Medical Center ("WMRMC"). Dixon was evaluated and received routine laboratory tests, CT scans of his head and spine, and x-rays of his spine and right shoulder, all of which had normal results. He received a prescription for Flexeril, a muscle relaxer, and orders for Tylenol or Motrin for pain, and then was released to the infirmary at Western Correctional Institution ("WCI").

Although Dixon was soon released from the infirmary, he was readmitted the next day, February 4, 2017, after he fell in his cell. Dixon was able to move all extremities, but when he was assisted to the medical examination table, he requested muscle relaxers and stated that he

could not walk. Dixon was given medication and remained in the infirmary until February 5, 2017. On that date, Dixon reported that he did not remember falling because he had lost consciousness.

On February 8, 2017 at approximately 12:55 p.m., Dixon requested a medical shower. While being escorted back to his cell, Dixon stated "I'm going to pass out," before slowly lowering himself to the floor and lying down. He was taken to a holding cell and examined while sitting on the floor. After a nurse examined him and he was held for observation, Dixon was returned to his cell at approximately 4:49 p.m. that same day.

Throughout February and March 2017, Dixon requested medical showers and stronger pain medication. He also requested a medical mattress and bottom bunk status. On February 10, 2017, Dixon complained of occasional episodes of dizziness and loss of consciousness, and that he was in constant pain in his back, arm, and neck. On February 23, 2017, Defendant Krista Bilak, R.N., told Dixon that there was no medical need for stronger pain medication or medical showers. She noted that Dixon acknowledged that he continued to go outside in the prison yard, and that he exhibited a normal gait and good upper and lower body strength. Because his speech was slurred, Nurse Bilak requested that prison custody personnel conduct a urinalysis on Dixon to test for drugs.

On March 8, 2017, Dixon was seen by Stacie Mast, R.N. During that visit, he moved without difficulty and did not report current problems with pain, yet he demanded stronger medication than the 800 mg of Ibuprofen that had been recommended. He was provided with Motrin and a muscle rub to address soreness. Dixon saw Nurse Mast again on March 27, 2017, when he requested a better mattress. He was told that if he submitted a formal request, he would

receive the mattress. On that visit, Dixon was able to move without difficulty and to bend at the waist. On March 30, 2017, Dixon declined a proposed medical examination.

On April 12, 2017, Dixon submitted a sick-call request form in which he asserted complaints of neck, back, and arm pain and requested pain medications, a second mattress, and a pillow. The next day, on April 13, 2017, Tammy Buser, R.N., examined him and found no tenderness, spasms, pain upon movement, or weakness.

On April 18, 2017, Dixon submitted another sick-call request form in which he complained of hearing voices and seeing blood stains on the ground wherever he went. He reported that correctional personnel were acting "queer" towards him. Med. Records at 62, Med. Defs.' Mot. Dismiss Ex. 1, ECF No. 24-4. He further complained he was "not getting good health treatment" and that unidentified persons were trying to "zapp (sic) [his] mind." *Id.*

On May 22, 2017, Dixon again was seen by Nurse Mast for complaints of back pain. At that time, he could walk without difficulty and bend at the waist, and he reported no active pain. Nurse Mast ordered Motrin and a topical muscle rub for Dixon.

On June 15, 2017, Dixon submitted a sick-call request form complaining of constant back pain when he moved his neck that had not improved with Ibuprofen and muscle relaxers. On June 28, 2017, Nurse Mast examined Dixon and noted that he walked without difficulty and could move all of his extremities. Dixon was able to bend and move from side to side without difficulty. He was reissued Motrin and the muscle rub. Nurse Mast declined to provide the medication Baclofen as not medically necessary. Dixon did not complain of back or neck pain during a July 1, 2017 visit to Nurse Mast or at any other point in July or August 2017.

In a declaration, Warden Bishop asserts that he is not a trained healthcare provider and had no role in the medical care provided to Dixon. He states that in the Maryland prison system, medical care is provided by private healthcare contractors. Thus, he attests that it was beyond the scope of his duties, responsibilities, and authorities as Warden to perform any kind of medical, dental, or mental health treatment on a prisoner or to prescribe a particular course of treatment.

## DISCUSSION

In his Motion, the Warden seeks dismissal or summary judgment on the grounds that (1) Dixon failed to exhaust administrative remedies; and (2) the evidence is insufficient to show that he failed to protect Dixon, in violation of the Eight Amendment. In their Motion, the Medical Defendants seek summary judgment on the basis that the evidence is insufficient to show that they acted with deliberate indifference to a serious medical need by providing inadequate medical treatment in response to Dixon's fall in the shower.

### I. Legal Standard

Both Motions seek dismissal under Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, summary judgment under Rule 56. If the Court considers matter outside the pleadings, the Court must treat motions as seeking summary judgment. Fed. R. Civ. P. 12(d). Before converting a motion to dismiss to one for summary judgment, courts must give the nonmoving party "a reasonable opportunity to present all the material that is pertinent to the motion." *Id.* "Reasonable opportunity" has two requirements: (1) the nonmoving party must have some notice that the court is treating the Rule 12(b)(6) motion as a motion for summary judgment, and (2) the nonmoving party "must be afforded a reasonable opportunity for discovery" to obtain information essential to oppose the motion. *Gay v. Wall*, 761 F.2d 175, 177

(4th Cir. 1985) (citation omitted). Here, the notice requirement is satisfied because both motions were titled as a "Motion to Dismiss or, in the Alternative, Motion for Summary Judgment," and Dixon responded by attaching exhibits to his briefs in opposition to the Motions. *See Laughlin v. Metro. Wash. Airports Auth.,* 149 F.3d 253, 260–61 (4th Cir. 1998).

As for an opportunity to conduct necessary discovery, Dixon has filed a separate Motion to Compel in which he states that certain video recordings should be made available to the Court. Although not entirely clear, the Court construes this request as seeking videos of his fall in the shower on February 2, 2017, the lack of safety rails or floor mats in the shower, and his transport away from the shower afterwards, as well as a video of his February 20, 2017 hand delivery to a correctional officer of an Administrative Remedy Procedure form ("ARP") in which he complained about the February 2 incident. Dixon asserts that he needs discovery to establish that there were no safety rails in the shower and that he submitted an ARP to a correctional officer, but it was discarded. However, there is no dispute that Dixon was injured in a fall in the shower, and that there were no safety rails or floor mats in the shower area. The Court also accepts, for purposes of the Motion, that Dixon attempted to file an ARP regarding this incident but was thwarted, such that it will not find that Dixon failed to exhaust administrative remedies. *See infra* part II.A. Because the requested discovery is not necessary to allow Dixon to respond properly to the Motions, the Motion to Compel will be denied, and the Court will treat the remaining Motions as seeking summary judgment.

Under Federal Rule of Civil Procedure 56(a), the Court grants summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In assessing the motion, the Court views the facts in the light

most favorable to the nonmoving party, with all justifiable inferences drawn in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The Court may rely only on facts supported in the record, not simply assertions in the pleadings. *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. A dispute of material fact is only "genuine" if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Id.* at 248–49. The nonmoving party "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1986). Because Dixon is self-represented, his submissions are liberally construed. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

In his memoranda of law in opposition to the Motions, Dixon asserts for the first time a new claim asserting that the conditions of confinement in his cell, specifically the failure to provide him with a medical mattress, rails for a top bunk, and bottom bunk status, violate the Eighth Amendment. Because these allegations were not included in the Complaint or the Amended Complaint, the Court need not and will not address them. *See Zachair, Ltd. v. Driggs*, 965 F. Supp. 741, 748 n.4 (D. Md. 1997) (stating that the plaintiff may not amend the complaint through motion briefs), *aff'd* 141 F.3d 1162 (4th Cir. 1998); *Mylan Labs., Inc. v. Akzo, N.V.*, 770 F. Supp. 1053, 1068 (D. Md. 1991) ("[I]t is axiomatic that the complaint may not be amended by briefs in opposition to a motion to dismiss.").

## II. The Warden

### A. Exhaustion of Administrative Remedies

The Warden first raises the affirmative defense of failure to exhaust administrative remedies. Under the Prison Litigation Reform Act of 1995 ("PLRA"), Pub. L. No. 104-134 § 803, 110 Stat. 1321 (1996) (codified as amended at 42 U.S.C. § 1997e(a)):

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a) (2012). Inmates must exhaust administrative remedies before they bring any "suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

Exhaustion is mandatory and generally may not be excused unless the administrative procedure is not available. *See Ross v. Blake*, __U.S. __, 136 S. Ct. 1850, 1858 (2016) (holding that an inmate "must exhaust available remedies, but need not exhaust unavailable ones"). "[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008). In *Ross*, the United States Supreme Court identified three circumstances when an administrative remedy is unavailable. An administrative procedure is not available when officers are consistently unwilling or unable to provide relief to aggrieved inmates, the procedure is so opaque that it is practically incapable of use, or prison administrators actively thwart inmates from filing grievances. *Ross*, 136 S. Ct. at 1859–60.

In Maryland prisons, the Administrative Remedy Procedure ("ARP") is the administrative process that must be exhausted. First, a prisoner must file a complaint, known as

8

an "ARP," with the warden of the prison within 30 days of the incident or when the prisoner gains knowledge of the injury giving rise to the complaint. *See* Md. Code Regs. ("COMAR") §§ 12.07.01.04 – 05.A. (2017). Second, if the ARP is denied, a prisoner must file an appeal with the Commissioner of Correction within 30 days. COMAR § 12.07.01.05.C. If the appeal is denied, the prisoner must appeal within 30 days to the Inmate Grievance Office ("IGO"). *See* Md. Code. Ann., Corr. Servs. §§ 10-206, 10-210 (West 2002); COMAR §§ 12.07.01.03, 12.07.01.05.B. Inmates may seek judicial review of the IGO's final determinations in a Maryland Circuit Court. Md. Code Ann., Corr. Servs. § 10-210.

The Warden provides documentation that strongly suggests that Dixon did not initiate, much less complete, any portion of the administrative process. Dixon, however, argues that he attempted to file an ARP by handing a completed form to C.O. Woolford, who allegedly discarded it. If prison administrators actively thwart inmates from filing grievances, the exhaustion requirement would not necessarily apply. *Ross*, 136 S. Ct. at 1859–60. Because Dixon requested discovery on this issue, it is premature to decide the issue of exhaustion of administrative remedies. For the reasons set forth below, however, the Court need not decide this question, because even assuming that Dixon properly exhausted administrative remedies, his claim against the Warden must be dismissed on other grounds.

### B. Eighth Amendment

Dixon asserts that the Warden has violated his rights under the Eighth Amendment by permitting unsafe conditions in the shower area. "The Eighth Amendment's prohibition on cruel and unusual punishments imposes certain basic duties on prison officials." *Raynor v. Pugh*, 817 F.3d 123, 127 (4th Cir. 2016). Those duties "include maintaining humane conditions of confinement," including "reasonable measures to guarantee the safety of the inmates." *Id*. In

order to establish liability based on conditions of confinement, both an objective element and a subjective element must be satisfied. *Id.* at 127–28.

Objectively, the prisoner must establish a "serious deprivation" of rights in the form of a "serious or significant physical or emotional injury," or a substantial risk of such an injury. *Danser v. Stansberry*, 772 F.3d 340, 346–47 (4th Cir. 2014); *Raynor*, 817 F.3d at 127. The objective inquiry requires a court to "assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk." *Helling v. McKinney*, 509 U.S. 25, 36 (1993).

Subjectively, a plaintiff must establish that the prison official involved had "a sufficiently culpable state of mind" amounting to "deliberate indifference to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Such a culpable state of mind requires (1) that a prison official have actual knowledge of an excessive risk to the prisoner's safety, or be aware of facts from which an inference could be drawn that a substantial risk of serious harm exists and actually draw that inference, and (2) that the prison official nevertheless disregarded the risk. *Id.* at 837. Such actual knowledge of a substantial risk may be established through circumstantial evidence, such that "a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Raynor*, 817 F.3d at 128 (quoting *Farmer*, 511 U.S. at 842).

Although Dixon suffered an objectively serious injury from his fall in the shower, he has not alleged, nor does the record contain, facts establishing that the Warden, or any other prison official, had any knowledge of unsafe conditions in the shower. Although Dixon notes that there were no safety rails or floor mats in the shower, there is no evidence that their absence rendered the shower area obviously unsafe, or that the design or construction of the shower area created a

substantial risk of injury. Notably, there is no claim that Dixon or anyone else had previously fallen in the shower, much less a claim that the Warden was made aware of such an incident. Thus, there is no evidence that the Warden had the subjective state of mind necessary to support an Eighth Amendment claim based on unsafe conditions of confinement.

To the extent that Dixon seeks to hold the Warden liable based on his overall supervisory responsibility for NBCI, such a claim also fails. The doctrine of *respondeat superior*, or vicarious liability, is not applicable to § 1983 claims. *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004) (holding that there is no *respondeat superior* liability under § 1983). Under § 1983, any liability imputed to supervisory officials must be "premised on a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care." *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (quoting *Slakan v. Porter*, 737 F. 2d 368, 372 (4th Cir. 1984)). Thus, supervisory liability under § 1983 must be supported with evidence that: (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to individuals like the plaintiff; (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *See Shaw v. Stroud*, 13 F. 3d 791, 799 (4th Cir. 1994). Again, there is no allegation or evidence that the Warden was made aware of any action or inaction by a subordinate prison official that caused unsafe conditions in the shower area. The Court will therefore grant summary judgment to the Warden.

At most, Dixon's complaint against the Warden about the shower conditions could allege a claim of negligence. Such a claim arises under state law and thus may not be brought in this Court pursuant to § 1983. *See Daniels v. Williams*, 474 U.S. 327, 333 (1986). Having dismissed the federal claims in this case, *see infra* part III, the Court may and will decline to exercise supplemental jurisdiction over any remaining state law claims. *See* 28 U.S.C. § 1367(c)(3) (2012). To the extent that Dixon's Complaint may be construed as asserting a negligence claim, the Court will decline to exercise supplemental jurisdiction and will dismiss the claim without prejudice. *See Carnegie Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988). Any such claim must be pursued in state court.

### III. Medical Defendants

Dixon asserts that the Medical Defendants violated the Eighth Amendment by failing to provide adequate medical care following his fall in the shower. A prison official violates the Eighth Amendment when the official shows "deliberate indifference to serious medical needs of prisoners." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014). To be "serious," the condition must be "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Jackson*, 775 F.3d at 178 (quoting *Iko* v. *Shreve,* 535 F.3d 225, 241 (4th Cir. 2008)). "An official is deliberately indifferent to an inmate's serious medical needs only when he or she subjectively knows of and disregards an excessive risk to inmate health or safety." *Jackson*, 775 F.3d at 178 (quoting *Farmer*, 511 U.S. at 837). "[I]t is not enough that an official should have known of a risk; he or she must have had actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by the official's action or inaction." *Id.* (citations omitted). Thus, a deliberate

indifference claim has both an objective component—that there objectively exists a serious medical condition and an excessive risk to the inmate's health and safety, and a subjective component—that the official subjectively knew of the condition and risk. *Farmer*, 511 U.S. at 834, 837. If the requisite subjective knowledge is established, an official may avoid liability if he responded reasonably to the risk, even if the harm was not ultimately averted. *See id.* at 844.

Deliberate indifference is an "exacting standard" that requires more than a showing of "mere negligence or even civil recklessness, and as a consequence, many acts or omissions that would constitute medical malpractice will not rise to the level of deliberate indifference." *Jackson*, 775 F.3d at 178; *Rich v. Bruce*, 129 F.3d 336, 339 (4th Cir. 1997) (finding that even when prison authorities are "too stupid" to realize the excessive risk their actions cause, there is no deliberate indifference). To constitute deliberate indifference to a serious medical need, the defendant's actions "must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miltier v. Beorn,* 896 F.2d 848, 851 (4th Cir. 1990), *overruled in part on other grounds by Farmer*, 511 U.S. at 837. "Questions of medical judgment are not subject to judicial review." *Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975). The right to treatment is "limited to that which may be provided upon a reasonable cost and time basis and the essential test is one of medical necessity and not simply that which may be considered merely desirable." *Bowring v. Godwin,* 551 F.2d 44, 47–48 (4th Cir. 1977).

Here, it is undisputed that Dixon received prompt emergency care immediately after he fell in the shower. A nurse responded to the scene, and his neck and back were stabilized with a neck brace and backboard. Although there were no visible signs of injury, he was promptly transported to a hospital, where he received CT scans and x-rays, both of which revealed no abnormalities. He was then released to the WCI infirmary, where he received pain medication

13

and muscle relaxers. Following his release back to NBCI, he reported falling in his cell and thus was readmitted to the infirmary for another day. Over the next few months, when Dixon continued to report pain and submit sick-call requests, he was regularly seen by medical personnel and continued to receive pain medication and muscle relaxers. After several months, Dixon's need for medical attention subsided, as his sick-call requests focused on unrelated health concerns.

Where the medical records establish that Dixon received immediate medical attention after his fall in the shower, and that in the ensuing months he received medical attention when he fell, was seen by medical personnel when requested, and was prescribed relevant medication, the Court concludes that the evidence does not support the claim that the Medical Defendants were deliberately indifferent to Dixon's medical needs. Although he may not have agreed with the level of pain medication prescribed and the conclusion at one point that he did not require medical showers, such disagreements on medical treatment are insufficient to establish deliberate indifference. *See Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985) (holding that "disagreements between an inmate and a physician over the inmate's proper medical care do not state a § 1983 claim unless exceptional circumstances are alleged"). Accordingly, the Court will grant summary judgment to the Medical Defendants.

## CONCLUSION

For the foregoing reasons, Dixon's Motion to Compel Discovery will be DENIED. The Motions to Dismiss or, in the Alternative, for Summary Judgment filed by the Warden and the Medical Defendants, construed as Motions for Summary Judgment, will both be GRANTED. A separate Order shall issue.

Date:   March 22, 2018

                                                THEODORE D. CHUANG
                                                United States District Judge